Good morning, Your Honor. May it please the Court. My name is Mario Valencia and I represent Joey Clark. About a year ago, Joey Clark was sentenced to 46 months in prison after he pled guilty to being a felon in possession of a firearm. We appealed the sentence that was imposed. The sentence that was imposed was 46 months because the Court determined that the guidelines range was 46 months to 57 months. That was based on a criminal history category of 19 and a criminal history points of 46 months was also within the range without the two-point enhancement. That is correct. If the two-point enhancement had not been applied and we were talking a criminal history category of 17, he was looking at I believe 46 would have been the high end of the guidelines. 36 to 46 or 38 to 46, something like that. That's correct. 46 would have been. So 46 was the overlap. Exactly. The one-overlap months or sentences that fit into both groups. So is your client really harmed by the two-point enhancement? We believe he is harmed. And the reason we believe he is harmed is because we believe that what the Court did in this case is that he applied the guidelines in a mandatory fashion. Even though the Court on the record says and acknowledges that they were advisory, in essence what he did was he gave them a presumption, a presumption of reasonableness in this case. And because he did that and was looking at the guideline range, he really didn't believe that he could go beyond that range unless we did something extraordinary. He gave them a tremendous amount of weight, more than any other factor under 3553A. If he had done the same thing, taking that enhancement off, then and done the same thing he did in this case, which was give him the low end of the range, certainly my client was prejudiced. Instead of not getting 46 months, he would have gotten 30. Of course, I don't have it here. You're really melding two arguments.  What two arguments am I melding? Well, you're melding the argument that says he gave the guidelines too much weight, and you're melding that with the argument that he shouldn't have given a two-point enhancement. I mean, if there are separate arguments and they, you know, I don't think you'd help by melding them together. I was focusing on the second argument. I mean, you still have your first argument, that he should have gone outside the range freely without giving any presumptive weight to the guidelines. But I'm just wondering whether your client was prejudiced by the fact that the range was moved up, since the sentence your client went up with fell within the lower range. Honestly, I don't understand the Court's question. Even without the two-point enhancement and the judge staying within the guidelines range, he could have given him 46 months. He could have. But what our argument would be and what we propose to this Court is that that's highly unlikely, because the Court was persuaded that in this case, Mr. Clark was carrying the gun for no other reason but to protect himself. He was up on murder charges for a murder that he did not commit. He had been shot at. He had been hit in the arm. He was wanted dead. The state of Nevada wanted him, was seeking initially the death penalty against him. So it wasn't like he was out committing a crime when he did this. He had no other resource. I believe if you look at the sentencing memorandum we submitted, the police wasn't going to protect him either. And so Joey Clark, at 22 years old, was carrying a gun with him to protect himself. You know, he could have defended and raised it as a defense, a necessity defense, as long as it's circuit. But you can raise a necessity defense if you have to carry a gun. I understand that, but we're beyond that point. When I got involved in this case... I understand. Never mind. That's okay. We're beyond that point. And at this point in time, what we're saying is I truthfully believe that if you look at the record, you can see that the judge gave him the low end of the guideline and would have done the same thing if the government had come in and the PSR had said the range in this case is 37 to 46 months because his criminal history category is a 17. I believe Judge Pearl, in this case, would have looked at this and would have said, very well, the guidelines are advisory, but they're a good place that I need to look at and I need to consult. And you're looking at 37 to 46 months. And then he would have given credence to the arguments that we made and would have said, in fact, I'm going to take a chance here and I'm going to give you the low end instead of the 46 months. I believe the government would have argued for 46 months and not 57 months. Now, in this case, you're obviously arguing that the fact that there was the marked-off serial numbers was not in evidence and could not be considered by the judge. That's your position. That is correct, that there was no evidence presented of the obliterated serial number. Is there no basis for him to consider that or talk about it or ask about it? It was in the indictment, but he pled just to possession. Correct. He pled just to possession. What's your authority for that? Well, the authority that we used was U.S. v. Thomas, and Your Honor said I was part of that case. So I'm sort of behind the eight ball in a way. He would be able to tell me better. But when we read that opinion, based on that opinion, in our position, our position was to the district court that, fine, they had made the allegation in the indictment that there was an obliterated serial number. How simple would it have been for them to present the gun and show the obliterated serial number? But my client did not plead guilty to the obliterated serial number, which is not an element of the offense. Bringing the gun into court is certainly not the only way they could have proven it. They could have brought, for example, somebody in who had seen the gun and testify about that. That's another possible. I mean, it could have been proven by testimony rather than, you know, actually physical evidence. But I'm wondering, I mean, here the PSR mentions the obliterated serial number. And did defense counsel challenge that finding? Yes, we did. And ask for an evidentiary hearing on the point? Well, we did have the evidentiary hearing, which was the sentencing hearing. We presented our witnesses. Certainly it wasn't our burden to prove the obliterated serial number. It was the government's burden. They relied simply on the PSR. And the cases, if Your Honor is referring to the cases that were submitted by government on Monday of this week, which I did not receive a copy of until I walked in here, that stand for the fact that if there's something in the PSR that's sufficient, if we don't object to it, or I can't remember exactly what they say. But as I read those cases, they fly in the face of Thomas, which stands for the proposition that you can't just simply rely on the PSR. In Amling, this Court said there's nothing sacrosanct about the PSR. So when you take a look at that, could the government have done something more? You bet they could have. That's our point. But they didn't. Now, you did object to that in the PSR in your sentencing hearing. You did object to that being in the PSR? Yes, we did. Well, I'll be asking the government as to why Thomas doesn't apply. Okay. I appreciate that. Do you want to save your minute and 44 seconds? I do, Your Honor. Okay. We'll even round it to two minutes. How about that? Thank you very much. We'll hear from the government. Good morning, Your Honor, and may it please the Court. I'm Rob Bellman for the United States. I think I want to start with the question that Judge Fletcher first posed, why Thomas doesn't apply. And there are two reasons. First, and I think what I'd like to do is actually start with the holding in Thomas, as I understand it. It holds that a district court cannot resolve a disputed sentencing enhancement fact solely on the basis of a guilty plea, where even though the plea is to an indictment that specifically states the enhancing fact. In this case, Thomas doesn't apply for two reasons. First of all, the Court isn't relying solely on the guilty plea. And I would point the Court specifically to page 91 of the excerpts of record. That is the police report, which expressly states that the serial number on the gun was obliterated, and that was offered to the Court as Exhibit N of the defendant's sentencing memorandum. In addition... So what? So that is evidence that the serial number has been obliterated, Your Honor, beyond the guilty plea. Was it introduced into evidence? Was it authenticated? I'm sorry? Was it authenticated? Was it introduced into evidence? It was only submitted as an exhibit to the defendant's sentencing memorandum. Answer my question. That's all that the only evidence in it. Answer my question. Was it submitted to evidence, or was it authenticated? It was not offered as an exhibit at the sentencing hearing. Was it authenticated? No, Your Honor. For all we know, it is a funny piece of paper from a different case, of another guy by the name of Clark, right? Well, that was... For all we know. For all you know, Your Honor, I suppose you could say that. Was there a finding by the district court that the serial number was obliterated? Yes, there was. Tell me where. Page 229 of the excerpts of record. What line? Oh, excuse me. Page 228 of the excerpts of record. What line? And that's lines 22 and 23. So there's actually a... Could you read me the... Yes. Line 22. One of those firearms has an obliterated serial number. Begins on line 22 and ends on line 23. But that's... The beginning of that says you were charged with any conduct. Other than that of being a felon in possession of a firearm. And one of those firearms has an obliterated serial number. Is that a finding or a recitation of what the indictment says? Well, the charges are. Well, the charges are. I believe it's a finding. That's not part of the charge, according to the defendant's argument. But the court is saying you weren't charged with anything but this. So what he's saying is you were charged with this. I can't see how you can take a piece of a judge's sentence that lists the charges and characterize it as a finding. I think that's borderline inappropriate on your part, if not dishonest. I have to differ with that, Your Honor. I think it stands alone, the words I've just quoted, as a finding in this context. The court is sentencing him on those very pages. I'm really shocked. I'm really shocked. You're an officer of the United States. You stand here and you suggest that this is a finding when the judge is simply saying these are the charges? Well, the first... I would like you to take this up with the United States attorney, okay? I will, Your Honor. When you get back, talk to him? Yes, Mr. Bogdan. Okay, tell him that I think, just speaking for myself, a wholly inappropriate argument to make by any lawyer, and particularly by a prosecutor and somebody appointed by the attorney general as a prosecutor for the United States. Plainly the sentence says nothing except these are the charges. And for you to stand there and claim this is a finding by the court is just beyond the pale. Your Honor, I... Do you have anything else? Yes, Your Honor. The sentence continues to make another point about the defendant attempting to wrestle away from the officer, but that's not part of the... Once again, it is introduced with you were in charge of any conduct other than what follows. Correct, Your Honor. But that last part of the sentence that I just quoted to you isn't part of the indictment either. That's not part of the charge. A factor to be considered is your attempt to wrestle away from the officer at the time you were arrested. But that... I think that's necessarily a finding of the court, because he wouldn't be considering it... Does it have anything to do with a serial number? Well, you know, Your Honor, it really depends on how you read that sentence. And I honestly and candidly read that as a finding of the court. I think you better have the United States Attorney write me a letter after he's had this conversation with you and see if he backs you on this. I will, Your Honor. I will, in fact, see to it. Assuming there is no finding, how can we possibly uphold this enhancement? Well, I would point you to the Romero-Rendon case, Your Honor, where it says that the court can rely on a PSR where the defendant submits no contrary evidence and there is, as I said, in the PSR... The defendant here challenged whether the serial number was obliterated. No. Actually, Your Honor, he challenged the court's ability to rely solely on his guilty plea as evidence of the obliterated serial number. And there's a distinction between a legal objection and a factual assertion. And all he's objecting to here is the legal ability of the court and the pre-sentence writer in the first instance... Could I ask you, relevant to Judge Kaczynski's concerns, where, since there was all this discussion about the charge and the argument you just characterized of the defendant in the hearing, which is how I read it also, that there was a focus on whether it was in the charge or not. And it was. The obliterated serial number was in the charge. What other evidence did the court actually have before it to make what you are reading as the... to resolve... Let's say it's an ambiguous statement. What would the court, district court, have had to come to the conclusion that the serial number was obliterated? Well, it had Exhibit N to the sentencing number and submitted by the defendant, which is the police report, which stated that the serial number was obliterated. It also had two statements in the PSR to that effect, page 4, paragraph 10, and page 22, paragraph 86, both of which specifically state that the serial number was obliterated. And we do have case law, which I've proffered, that says the court can rely on the PSR. Right. So, and is there anything in the record to indicate that the, during the sentencing hearing, that the district court had actually looked at those aspects? Yes, the court... Or do we just assume that? Yes, there is, Your Honor. At the outset of the sentencing hearing, the court said that it had received, among other things, the sentencing memorandum and the PSR. Where are you reading from? I'm trying to find that for you, Your Honor. Did the district court say it's adopting the findings of the PSR? No, it did not specifically say that. And I... So how can you rely on that? I mean, what we have said, what our cases say is when the district court says, I am relying on adopting the findings of the PSR, it's entitled to do so, except to the extent the defendant challenges some of them. And essentially, the way it works, I understand, is by exception. You know, I've reviewed many of these, and I've done a few sentencing myself. A few sentencing myself, and what normally happens is most of the facts in the PSR are not controversial or not disputed. And the defendant will come in and say, we object to paragraph 27, 59, 108. And sometimes they say specifically what they object to, and they say, you know, we challenge those things. And what the district judge then does is say, I adopt the portions of the PSR that are not challenged, and then, Mr. Defense Counsel, what would you like to do about the things that are challenged? Would you like an evidentiary hearing? You know, how would you like to proceed? And that's how sentencing hearings work, in my experience. I take it that's not different from the way it works with you. But if the district judge hasn't adopted the PSR at all, then I don't know how he can rely on the PSR as having him made a finding that the things in the PSR are accurate. Well, I think I finally understand the point you were making before, Your Honor, and you're drawing a distinction between a situation unlike this one where the court specifically relies on the PSR in making its findings. And I do concede that we don't have that here. But what I took the defendant's argument to be was that the State's evidence — excuse me, the government's evidence was insufficient to establish this. And that's why I was pointing to the police report and the PSR. Well, but if the district — see, it's one thing to say that the government or the district court can rely on the PSR, except as challenged, if the district court, in fact, chooses to adopt it. But it's a wholly different thing to say that what's in the PSR establishes factual basis when the district court hasn't even adopted it. The district court can do that, but it doesn't necessarily do that. And especially if there's a dispute about one provision, district courts, in my experience, don't just wholesale adopt them. They look and see what the dispute is about. And as best I can tell, there was nothing on this record to deal with a dispute of fact. The district court's dealing with a dispute of fact. He doesn't adopt the PSR, and he doesn't hold a hearing. May I respond, Your Honor? Yeah. I think the only time that the sentencing transcript record deals specifically with this objection to the PSR is earlier on, around pages 140 and 141 of the excerpts of record. And they do go over this legal objection to whether or not you can rely on the guilty plea alone to establish this enhancement fact. And the court does overrule that objection. But beyond that, I concede the court doesn't specifically say, you know, I find based on the PSR. Why not just confess there? I mean, you know, government wins when justice is done. If you don't have a finding, if the district court imposes an enhancement but neglects to make a finding supporting it, it seems to me you should join hands with the defendant, particularly when the defendant is so close to serving an extra time. I mean, this could have been resolved months ago. In any event, your time is up. Thank you. There is, by the way, a transcript of this. The audio of this is available online in case you have any doubt as to what you said. Yes, Your Honor. Or you lost this. Thank you. You have two minutes for rebuttal if you choose to take it. So Mr. Clark is about to get out or has gotten out? He is, Your Honor, any day, as a matter of fact. His release date, according to the BOP's website, is September 23rd or so this year. But my understanding is that within days he will probably be released to a halfway house in Las Vegas where he will then start serving three years of supervised release. So what relief can we grant if we choose to do that? At this point in time, our hope would be that if this court rules in our favor and remands it back down for resentencing, that perhaps he might do less time on supervised release. But that would be it. He has done his time pretty much. Can I ask a question on the transcript 141? There are counsel, I realize you weren't the counsel, but there's a specific objection to the two-point enhancement that's reflected in the PSR, which does state, base it on the obliterated serial number. So it's obvious that the judge was aware, at least in the PSR, of the allegation of an obliterated serial number. Is it your position that the district court could not then take that into account when it was going through the enhancements under the involuntary guidelines, or advisory guidelines? That is our position. Without making a finding? Without making a finding, correct. All right. Okay. Thank you, counsel. Care Society will stand submitted. Thank you.
judges: B. Fletcher, Kozinski, Fisher